Filed 8/28/24  P. v. Anderson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B331130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A622620) |
| v. | |
| ROBERT ANDERSON, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1983, a jury found appellant Robert Anderson, Jr., guilty of two counts of first degree murder and one count of robbery. In 2022, he filed a petition for resentencing under Penal Code section 1172.6.[1] The superior court denied his petition, finding that the record of conviction established he was the actual killer and thus was ineligible for relief as a matter of law. On appeal, he contends that the record of conviction does not conclusively establish he is the actual killer. We agree and therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Anderson Is Convicted of Murder*

After a March 1982 preliminary hearing, the trial court found sufficient evidence to hold Anderson to answer for two charges of murder and two charges of robbery. The only testimony presented at that hearing was that of Reynard Young, who testified that he saw Anderson shoot Sylvester Lawson, Jr., and Phillip Dwight Hayes. Thereafter, in April 1982, an information was filed charging Anderson with the murders and robberies of Lawson and Hayes.[3] The information also alleged that Anderson personally used a handgun in the crimes, that

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered as 1172.6 without substantive change. (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) For clarity, we use the current statutory numbering.

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

[3] Before trial, the count of robbery against Lawson was dismissed.

both Lawson and Hayes were murdered on or about the same day, and that the murder of Hayes was committed while Anderson was committing a robbery.

A jury trial commenced in August 1983. Young testified that, on the night of the murders, he was wearing "a black long-sleeved shirt with a gray design" and "some black pinstriped slacks" that "look[ed] black" from a distance. Anderson was wearing "blue jeans" and a "medium brown" jacket. While walking toward Young's home, he and Anderson bumped into Lawson, who was using a public phone, threatening someone. Anderson knew Lawson, and they conversed for a bit, before Anderson also threatened the other party on the phone.

After the phone call ended, Lawson stated he intended to kill the person he was just talking to and asked whether Anderson and Young would help; Anderson said he would but Young demurred, stating he had just gotten out of prison. Anderson, however, asked Young to accompany him to get a firearm, and Young agreed. Lawson drove Anderson and Young in his Cadillac to where Anderson stated he could get a gun; Hayes was passed out in the front passenger seat when Anderson and Young got into the backseat. Anderson sat on the driver's side and Young sat on the passenger's side. Lawson drove them to Nickerson Gardens and pulled into a parking lot.[4]

After parking, Lawson, Young, and Anderson exited the car. Anderson walked off by himself for three to four minutes, then returned. Lawson and Young then followed Anderson to an

---

[4] Wikipedia states that Nickerson Gardens "is a 1,066-unit public housing apartment complex . . . in Watts." (Wikipedia <https://en.wikipedia.org/wiki/Nickerson_Gardens> [as of August 27, 2024], archived at https://perma.cc/R48P-GCYW.)

apartment where Anderson knocked and entered. About five minutes later, Anderson exited and stated that the person in the apartment had a gun but it was "stashed," and they would need to go retrieve it. Lawson and Young followed Anderson for another three or four minutes to a field, where Anderson directed Lawson and Young to each search a different area, while he searched a third area. After a minute, Anderson indicated he had found the gun; Young saw him with a pistol.

Lawson and Young walked toward Anderson; when Lawson neared Anderson, Young was about five feet away. Lawson asked to see the gun and Anderson pointed it at him and said, "Here it goes." Lawson responded, "Take the car!" and Anderson shot him. After Lawson fell, Anderson shot him three more times. Anderson then took a watch from Lawson's pocket and the keys to the Cadillac.[5]

The pair then walked back to the car. When they arrived, Anderson opened the passenger door, dragged Hayes out, and shot him four times. Young and Anderson then drove off in the Cadillac and eventually ended up at the house of Young's brother. Young's brother testified that Anderson admitted the killings to him.

Debra Jones testified that she was staying with a friend in Nickerson Gardens and, on the night of the murders, she was looking out of her window when she saw a Cadillac drive into the parking lot. She identified the Cadillac that Lawson was driving that night. Jones saw one person exit the Cadillac from the passenger side, who walked off. Jones did not get a good look at

---

[5] Later evidence showed the car was registered to Phillip Hayes and Rosemary Hayes.

the person when he left, but when he returned approximately five minutes later, she saw his face. In court, she identified the person as Anderson.[6] Jones testified that the person she saw was wearing a "dark long-sleeved shirt" with some sort of design and "dark pants."[7] After the person returned, he fired three shots into the air. He then walked to the passenger side of the car, argued with someone for approximately ten minutes, and then Jones heard one more gunshot near the car; she could not see anything. Jones heard someone say, "Let's get out of here," and the car left.

During closing arguments, the prosecutor emphasized that "the case depends very heavily upon Re[y]nard Young" and "does come down to the facts as related to by Re[y]nard Young." The prosecutor summarized all the evidence that pointed to Anderson as the person who shot Lawson and Hayes.

Defense counsel's closing argument called into question whether the witnesses had been truthful and whether the evidence sufficed to prove that Anderson was the killer. He reminded the jury of Debra Jones's testimony, that someone wearing a black shirt and dark pants was the one who fired the gun in the parking lot—and that this clothing description matched what Young said he was wearing that night. Defense counsel also argued that Young had been an accomplice, telling the jury "[i]f there's any single one of you who hasn't thought that

---

[6] The prosecutor then had Reynard Young brought out and asked Jones whether Young could have been the person she saw; Jones stated it was not.

[7] She later agreed that it was a black shirt.

5

Re[y]nard Young is at the very minimum an accomplice in this, I am shocked."

After closing arguments, the court instructed the jury, including a series of instructions regarding accomplices, all requested by Anderson: CALJIC 3.10 (Accomplice—Defined),[8] 3.11 (Testimony of Accomplice Must Be Corroborated), 3.12 (Sufficiency of Evidence to Corroborate an Accomplice), 3.13 (One Accomplice May Not Corroborate Another), 3.14 (Criminal Intent Necessary to Make One an Accomplice), 3.18 (Testimony of Accomplice to Be Viewed with Distrust), and 3.19 (Burden to Prove Corroborate Witness Is an Accomplice).[9]

The court also included instructions regarding murder: CALJIC 8.10 (Murder—Defined), 8.11 ("Malice Aforethought"—Defined), 8.20 (Deliberate and Premeditated Murder), 8.21 (First

---

[8] The version of CALJIC 3.10 provided to the jury read: "An accomplice is one who [is] subject to prosecution for the identical offense charged against the defendant on trial. [¶] To be an accomplice, the person must have aided, promoted, encouraged, or instigated by act or advice the commission of such offense with knowledge of the unlawful purpose of the person who committed the offense."

[9] The version of CALJIC 3.19 provided to the jury read, in pertinent part: "You must determine whether or not the witness Reynard Young was an accomplice as I have defined that term. [¶] . . . [¶] In the event the defendant has not proved by a preponderance of the evidence that Reynard Young is an accomplice or the evidence is evenly balanced so that you are unable to say that the evidence on either side of the issue outweighs the other, then you must find that he was not an accomplice."

6

Degree Felony-Murder),[10] and 8.80 (Special Circumstances - Introductory).[11]

The jury found Anderson guilty of the murders of Lawson, and Hayes, both in the first degree. The jury found that in the commission of both murders, Anderson "did personally use a firearm, to wit, a handgun." The jury also found true that Anderson had committed multiple murders within the meaning of section 190.2, subdivision (a)(3).[12] Finally, the jury found that Anderson was guilty of robbery, that he "did personally use a firearm, to wit, a handgun" in the robbery, and that Hayes was murdered while Anderson "was engaged in the commission of robbery." The court sentenced Anderson to life without the possibility of parole. Anderson appealed his conviction and, in

---

[10] The version of CALJIC 8.21 provided to the jury read, in pertinent part: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree."

[11] The version of CALJIC 8.80 provided to the jury read, in pertinent part: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if the murder was convicted under (one or more of) the following special circumstance(s): Murder in Commission of Robbery and Multiple Murder."

[12] (§ 190.2, subd. (a)(3) ["The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true: [¶] . . . [¶] (3) The defendant, in this proceeding, has been convicted of more than one offense of murder in the first or second degree"].)

May 1985, we affirmed the judgment in *People v. Anderson* (May 30, 1985) B002906 [nonpub. opn.].

### B. *Anderson Petitions for Resentencing*

In February 2022, Anderson filed a form petition for resentencing under section 1172.96, checking the boxes next to statements proclaiming his eligibility for relief, and requesting appointment of counsel. In March 2022, the superior court appointed counsel for Anderson and ordered the People to file an informal response to the petition. In the response, the People contended Anderson was ineligible for relief as a matter of law because he was the actual killer. Anderson replied that determining he was the actual killer "requires a court to make a factual determination prior to an OSC" and this was "not allowed under current law." Therefore, he contended, he had met his prima facie burden and was entitled to an evidentiary hearing.

The court denied Anderson's petition, stating that "Mr. Anderson was prosecuted as the actual killer," that the jury had found Anderson guilty of both felony murder and "willful, deliberate and premeditated murder," and that the jury had found true the allegation that he had used a firearm. And because the jury was not instructed on either the natural and probable consequences doctrine or aiding and abetting, the court concluded that "the only theory presented to the jury was that [Anderson] was the actual killer," rendering him ineligible for relief under section 1172.6. Anderson timely appealed.

8

## DISCUSSION

### A. *Governing Law*

Section 1172.6, subdivision (a) provides: "A person convicted of felony murder . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." Under the new law, "[a] participant in the perpetration or attempted perpetration of a felony listed in [section 189,] subdivision (a) in which a death occurs"—with robbery being one of the listed felonies—"is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).)

If a defendant files a facially sufficient petition under section 1172.6, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie showing for relief. (§ 1172.6, subds. (b)–(c).) After the appointment of counsel and the opportunity for briefing, the

9

superior court may "consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) Although the superior court " 'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing,' " " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971; see also *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161 ["a trial court can properly deny a petition at the section 1172.6, subdivision (c) prima facie hearing by relying on a record of a conviction that unambiguously precludes a conclusory assertion that the petitioner could not be convicted today because an accomplice liability theory of murder was invalidated"]; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 ["trial court should accept the assertions in the [section 1172.6] petition as true unless facts in the record conclusively refute them as a matter of law"].) The "record of conviction" includes "admissible trial evidence," "the court's instructions to the jurors," and "the parties' closing arguments." (*People v. Ervin* (2021) 72 Cal.App.5th 90, 102.)

### B. *The Court Erred in Finding Anderson Ineligible for Relief as a Matter of Law*

Anderson argues the court erred in determining his ineligibility as a matter of law as the actual killer because the jury that convicted him was instructed with both CALJIC 3.10 (Accomplice—Defined) and CALJIC 8.21 (First Degree Felony-Murder). He contends the inclusion of these two instructions "permitted the jury to find appellant guilty of both murders and

10

to find true the special circumstance allegations without necessarily finding that appellant was the actual killer."

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) Upon review of the record of conviction, we conclude the court erred in finding Anderson ineligible for relief as a matter of law because the jury could have convicted Anderson of first degree felony murder without finding him to be the actual killer.

The jury was instructed that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree." It is undisputed that the jury found Anderson guilty of robbery, and that the robbery occurred as part of the murder of Hayes. Therefore, if there was evidence to support that someone else might have shot Lawson and Hayes, then the jury could have found Anderson guilty of both murders without finding him to be the actual killer.

Reynard Young testified that Anderson shot Hayes after pulling him out of the parked Cadillac. Debra Jones testified that she saw someone fire four shots in that parking lot. Although Jones identified this person as Anderson, as the defense counsel pointed out in his closing argument, she also testified that the shooter was wearing a black shirt and dark pants—clothing more closely matching what Young testified he was wearing that night. Additionally, the person who Jones saw exited the car from the passenger side—Young testified that he sat on the passenger side. Young also testified that Anderson

11

had taken a watch from Lawson and taken the keys to the Cadillac which belonged to Hayes. From this testimony, defense counsel's argument, and the instructions given to the jury, it is possible that the jurors could have concluded that, although Young shot Lawson and Hayes, Anderson intended to rob them, and because the murders occurred during that robbery, Anderson was still guilty of murder in the first degree. Further, although the jury found that Anderson "did personally use a firearm" in the murders, it did not find that he personally *discharged* that firearm. In light of these circumstances, the record does not "establish conclusively that the defendant is ineligible for relief" and the court erred in dismissing his petition at the prima facie stage. (*People v. Curiel* (2023) 15 Cal.5th 433, 450.)

Our discussion of the conclusions the jury may have reached in light of the record does not imply that they did so. We simply recognize that the " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Id.* at p. 971.) Here, Anderson alleges the prosecution could have proceeded against him on a theory of felony murder, that he was convicted of felony murder, and that he could not now be convicted of felony murder because of changes made to Penal

Code sections 188 and 189.  Because the record of conviction does not refute these allegations as a matter of law, Anderson made a prima facie showing for relief.[13]

## DISPOSITION

The superior court's order is reversed.  On remand, the court is directed to find that Anderson has met his burden to make a prima facie showing, to issue an order to show cause, and to proceed pursuant to section 1172.6, subdivision (d).

NOT TO BE PUBLISHED

KELLEY, J.[*]

We concur:

ROTHSCHILD, P. J.             WEINGART, J.

---

[13] Because we find that the record of conviction and the felony murder instruction demonstrate that the superior court erred in finding that Anderson failed to make a prima facie showing as a matter of law, we need not consider his contention that the court also erred because an "accomplice" instruction was also given.

[*]Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.